IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL and CARRIE CHROSTEK, as parents and best friends of BEN CHROSTEK,<br><br>      Plaintiffs<br><br>vs.<br><br>CHICAGO PARK DISTRICT, GERRY HENAGHAN, JESSE H. RUIZ, MICHAEL P. KELLY, TIM LeFEVOUR and JOHN GANNON in their official and individual capacities,<br><br>      Defendants | Case No.: |

## VERFIED COMPLAINT

Now come the plaintiffs, by and through their attorney, Steven E. Glink, and complaining against the defendants, state as follows.

## STATEMENT OF THE CASE

This is the sad case of a twelve year old autistic boy who has been summarily banned from all Chicago Park District hockey programs simply because he exhibited behaviors that are a manifestation of his disability but are behaviors that are exhibited regularly by his non-disabled peers.

This case is brought under the Americans with Disabilities Act as well as section 504 of the Rehabilitation Act to rectify the discriminatory application of defendants' participation policy that will deny this boy the full benefits of the defendants' services and programs.

## JURISDICTION

1. This action is brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 USC 701, et seq. and The Americans with Disabilities Act, 42 USC 12101, et seq.

2. Jurisdiction is proper pursuant to 28 USC 1331

3. Venue is proper pursuant to 28 USC 1392.

4. The defendants' principal place of business is located in Chicago, Cook County, Illinois.

5. All material acts related to this incident occurred in DuPage County and Cook County Illinois.

## THE PARTIES

6. Plaintiffs are all citizens of the United States and currently residents of Palos Park, Illinois, having previously been residents of Chicago.

7. Ben is a twelve (12) year old boy.

8. Michael is Ben's biological father. Carrie is Ben's mother.

9. Chicago Park District ("the district" or "CPD") is a local public entity organized and operated pursuant to Illinois law.

10. Michael P. Kelly is employed as the CEO of the district.

11. Jesse H. Ruiz is the President of the district's Board of Commissioners.

12. Gerry Henaghan is an employee of the district and serves Director of CPD's special recreation programs, which includes but is not limited to the hockey program.

13. Tim LeFevour is employed by SWG Worldwide who has been contracted by CPD as the manager of Soldier Field, The Morgan Park facilities and Mc Fetridge Ice Arena, where some of Ben's hockey games are played.

14. John Gannon is employed by SWG Worldwide, who is contracted by CPD as the manager of Soldier Field, the Morgan Park Ice Arena and the McFetridge Ice Arena. Gannon also serves as the director of the Horned Frogs hockey team, which is Ben's team.

15. On information and belief, all individual defendants have policy and decision-making authority over issues concerning granting accommodations and/or Ben's participation in CPD's hockey programs.

16. All individual defendants are sued in their individual and official capacities.

17. Plaintiffs have a private right of action under *Tennessee v. Lane* and its progeny.

## COUNT I- DISPARATE TREATMENT

18. The Park District is a public entity as defined in Title II of the ADA.

19. The Park District's hockey program uses publically owned facilities to implement its hockey programs and as such, operates as a public accommodation as defined in Title III of the ADA.

20. The Park District is a recipient of federal funds and uses a part of those funds to operate and maintain its hockey facilities and its hockey program.

21. Ben has been diagnosed with autism spectrum disorder (ASD) by licensed clinical psychologist Dr. Meagan Hauser.

22. Ben has a record of ASD as he has been found eligible for an IEP at his junior high school.

23. Ben is regarded as having a disability, to wit, ASD.

24. Ben's disability substantially limits him in his ability to learn; to understand and regulate the expression of his emotions.

25. Defendants operate their hockey programs subject to the rules of USA Hockey, which are attached as exhibit A.

26. Despite Ben's substantial limitations, Ben is able to conform his conduct to the USA Hockey rules (letter from Mike L attached as exhibit B).

27. Similarly, Ben can perform the essential functions of the hockey program with reasonable accommodations (see: Letter from Dr. Hauser, attached as exhibit C).

28. This is Ben's first year as a participant in CPD hockey program. Ben has been a participant in other youth hockey programs since 2016.

29. At all times relevant to this complaint, Ben's parents paid fees to the CPD to allow Ben to be a participant in CPD's hockey programs.

30. At all times that Ben was a participant in CPD hockey programs, Ben's parents always informed the coaches and other CPD staff that Ben was diagnosed with ASD (see exhibit B).

31. Ben's parents also always requested that CPD coaches and staff provide Ben with certain accommodations such as sensory breaks, verbal explanations/cues to correct Ben's behaviors. The parents also requested that a para-professional coach be assigned to Ben as needed (see exhibit B).

32. Defendants agreed to and did provide these accommodations generally.

33. On or about January 23, 2019, plaintiffs received a letter from defendant Henaghan (attached as exhibit D) informing them that Ben was unilaterally suspended and barred from further participation in CPD's hockey program for the three incidents described in the letter.

34. The incident dated 12/17/18 in Henaghan's letter was provoked by the other player when that player struck Ben in the face with his hockey stick and then punched Ben in the head during a practice. That player was not disciplined, suspended or removed from CPD's hockey program.

35. Defendants imposed certain conditions upon plaintiffs as a condition of Ben's re-admission to the hockey program.

36. Plaintiffs had scheduled a meeting with CPD's attorney and other CPD staff for February 1, 2019 as a part of the interactive process to discuss the matter and to see if further accommodations could be implemented.

37. Prior to the scheduled meeting, plaintiffs presented Dr. Hauser's (ex. C) to defendants. Defendants accepted that letter for review and consideration.

38. Defendants cancelled that meeting and have refused to discuss the matter since that time.

39. Ben's parents have attended hundreds of hockey games and practices and have observed many other players engage in the type of conduct described in Henaghan's letter. None of those players have been suspended or banned from CPD hockey programs (affidavit of Mike Chrostek is attached as exhibit E).

40. In addition, Ben has never been penalized in any hockey game for fighting or for intentionally causing an injury to any player, coach or referee (see exhibit E).

41. Defendants' actions of suspending Ben for conduct that is a manifestation of his disability and are also typical behaviors of adolescents in youth hockey programs while failing to suspend or discipline other similarly situated non-disabled players who have engaged in the same or similar conduct amounts to disability discrimination.

participating in any and all Park District hockey activities until further order of the Court;

B. Defendants are ordered to pay the plaintiffs in excess of $75,000.00 as damages for defendants' actions;

C. Defendants are ordered to reimburse plaintiffs for their reasonable attorney's fees as determined by the Court;

D. Any other Order as the Court deems just.

## COUNT II-FAILURE TO ACCOMMODATE

42. Title II of the ADA prohibits local governmental entities from discriminating against a qualified individual with a disability by denying the qualified individual the full benefit of services, programs and/or activities on the basis of a disability.

43. CPD is a local governmental entity as defined by law.

44. Title III of the ADA prohibits disability discrimination (e.g. denial of the full benefit of services, programs and/or activities) in places of public accommodation.

45. CPD facilities are places of public accommodation as defined by law.

46. Section 504 of the Rehabilitation Act prohibits the same type of discrimination as does the ADA but applies only to recipients of federal funds.

47. The district is a recipient of federal and state funds.

48. Ben is a qualified individual with a disability as that term is defined by the ADA and §504.

49. Plaintiffs re-allege their allegations contained in paragraphs 21-42 of count I as their allegation in count II.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court enter the following Order:

    A.  Pursuant to FRCP 65, defendants be restrained and enjoined from prohibiting Ben from

50. Defendants failed to provide an aide to Ben while he participated in games (vs. practices), both in the past and prospectively, despite the fact that providing an aide for games was both reasonable and effective for Ben.
51. Defendants also failed to engage in the interactive process after Ben was suspended from the hockey program (email string between the Park District's counsel and plaintiff Mike Chrostek attached as exhibit F).
52. Defendant CPD has a custom, practice and /or policy of not providing reasonable accommodations to participants in their hockey program (see exhibit B- "removal of a participant from the program…is not changed or over-rid because a child has a disability").
53. Defendants failed to consider or attempt to provide the accommodations suggested by Dr. Hauser (exhibits C and F).
54. Defendants' denial of the plaintiffs' requested accommodations and refusal to engage in the interactive process is a failure to accommodate Ben's disabilities and violates Ben's rights under both the ADA and section 504 of the Rehabilitation Act.

Wherefore, plaintiffs respectfully pray that pursuant to FRCP 65, this Honorable Court enter a preliminary injunction upon the defendants restraining them from denying Ben's participation in any and all Park District hockey program activities until further order of the Court.

Plaintiffs further pray that this Honorable Court enter a judgment in their favor and against all defendants, jointly and severally in an amount in excess of $75,000.00 plus costs and reasonable attorney's fees.

## COUNT III DISPARATE IMPACT

55. Plaintiffs re-allege their allegations in paragraphs 1-55 above as their allegations for count III.

56. Defendants actions have had an extraordinarily severe impact on Ben based, in part upon his autism because Ben does not understand why he has been excluded from the hockey program. Ben is feeling very depressed and has told his parents that he wants to call 911.

WHEREFORE, plaintiffs respectfully pray that pursuant to FRCP 65, defendants be restrained and enjoined from prohibiting Ben from participating in any and all Park District hockey programs until further order of the Court.

Plaintiffs further pray that this Honorable Court enter judgment against the defendants in an amount in excess of $75,000/00 plus costs and reasonable attorney's fees.

Respectfully Submitted,

By: s/STEVEN E. GLINK

STEVEN E. GLINK

LAW OFFICES OF STEVEN E. GLINK
ATTORNEY FOR PLAINTIFFS
ARDC # 6180869
3338 COMMERCIAL AVENUE
NORTHBROOK, ILLINOIS 60062
847/480-7749 (Voice)
847/480-9501 (Facsimile)