Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL and CARRIE CHROSTEK, as
parents and best friends of BEN
CHROSTEK,

               Plaintiff's

CHICAGO PARK DISTRICT, GERRY
HENAGHAN, JESSE H. RUIZ, MICHAEL
P. KELLY, TIM LeFEVOUR, BRAD
CAZCHOR, SMG WORLDWIDE and
JOHN GANNON in their official and
individual capacities,

               Defendants.

Case No. 19-CV-2479

Honorable Gary Feinerman

## DECLARATION OF GEORGE SYMRNIOTIS

    1.      My name is George Symrniotis. I am presently employed by the Chicago Park

District as the 1st Deputy General Counsel.

    2.      I have been in my role as 1st Deputy General Counsel throughout the time of Ben

Chrostek's involvement in the Chicago Park District as a player on the Horned Frogs Hockey

Team.

    3.      On March 7, 2019, I received a letter from Gene Ognibene, counsel for Amateur

Hockey Association of Illinois ("AHAI") stating a 'SAFE SPORT REPORT" investigation had

been initiated, a true and accurate copy of which is attached to the accompanying Exhibit 2.[1]

    4.      The Horned Frogs hockey program in which Ben Chrostek participated is

affiliated with AHAI, which is in turn affiliated with the national hockey organization, USA

Hockey, Inc.

---

[1] All exhibits referenced in this declaration are the exhibits attached to the Memorandum of Law in
Support of the Motion to Dismiss by Defendants Chicago Park District, Gerry Henaghan, Jesse Ruiz, and
Michael P. Kelly, to which this Declaration is attached as Exhibit 1.

5.      Prior to receiving the March 7, 2019 letter from Mr. Ognibene, I was unaware of any SAFE SPORT REPORT investigation. I had not received any prior messages or communications from Mr. Ognibene or anyone else regarding the matter.

6.      I subsequently spoke with Mr. Ognibene, who advised that his investigation had been initiated by a complaint to AHAI from Plaintiff Michael Chrostek.

7.      Once an agreement had been reached to reinstate Ben Chrostek to the Horned Frogs hockey program for the remainder of the hockey season, I informed Mr. Ognibene of the agreement between the parties.

8.      On April 29, 2019, Mr. Ognibene sent an e-mail to all parties informing them of the findings and conclusion of the investigation. Exhibit 3 is a true and accurate copy of that e-mail message.

9.      Exhibit 4 is a true and accurate copy of Bylaw 10 of the USA Hockey Bylaws, as included in the 2019-2020 USA Hockey Guide, which I accessed on the date of this Declaration at the following link: https://www.usahockey.com/annualguide

10.      Exhibit 5 is a true and accurate copy of Article 14 of the AHAI Bylaws, which I accessed on the date of this Declaration at the following link:

https://www.ahai.org/page/show/249304-by-laws

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

/George Symmiotis/

Date: 8/26/2019

2720963.2

Exhibit 2



March 7, 2019

**<u>VIA CERTIFIED MAIL</u>**
George Smyrnitios,
1st Deputy General Counsel
CHICAGO PARK DISTRICT
541 Fairbanks, 3rd Floor
Chicago, IL 60611

      Re: Benjamin Chrostek

Dear Mr. Smyrnitos:

My name is Gene Ognibene, AHAI R&E. I've been assigned to investigate a SAFE
SPORT REPORT involving Benjamin Chrostek, a player on the Honored Frogs.
Over last 4 weeks, I have made NUMEROUS attempts to reach you by telephone.

I've left multiple messages on your voice mail, with no response.

It is imperative you make contact with me as soon as possible.

Please call me as soon as possible, so we can move forward.

                  Sincerely,

                  *Gene Ognibene*
                  Gene Ognibene
                  Attorney-At-Law

Exhibit 3

| | |
|---|---|
| **From:** | Smyrniotis,George |
| **Sent:** | Tuesday, April 30, 2019 9:50 AM |
| **To:** | Keil, Heather; Gallagher, Colleen |
| **Cc:** | 'Glenn F. Fencl'; 'Amber N. Lukowicz' |
| **Subject:** | FW: In Re Benjamin Chrostek & Chicago Park District |
| | |
| **Importance:** | High |

Fyi. Safe Sport Report finding.

**From:** Gregg Chudacoff <gregg@generaltruckparts.com>
**Sent:** Monday, April 29, 2019 9:49 PM
**To:** 'Gene Ognibene' <gognibene@sbcglobal.net>; Smyrniotis,George <George.Smyrniotis@ChicagoParkDistrict.com>; ebay41@comcast.net
**Cc:** 'Paul Jakubowski' <pjakubowski@ahai2.org>
**Subject:** RE: In Re Benjamin Chrostek & Chicago Park District
**Importance:** High

Gene

Thank you

gregg

**From:** Gene Ognibene [mailto:gognibene@sbcglobal.net]
**Sent:** Monday, April 29, 2019 9:19 PM
**To:** george.smyrniotis@chicagoparkdistrict.com; ebay41@comcast.net
**Cc:** Paul Jakubowski; Gregg Chudacoff
**Subject:** In Re Benjamin Chrostek & Chicago Park District

Please let this email serve as written notice to all parties, of findings made at the conclusion of this investigation
.

This matter originated as a safe sport complaint concerning the removal of Honored Frogs player Ben Chrostek from team, for an on ice incident with an opposing player.

This incident marks the second time Ben Chrostek was removed/suspended from play as an Honored Frogs player.

The prior incident occurred in the previous season.

Upon receiving a request to investigate this matter, I made contact with Michael Chrostek, Ben's Father.

Michael provided following information:

The current incident was initially instigated by opposing player.

Ben's inclusion aid Clark Shimoda provided statement reflecting his belief that Ben was wrongfully removed from play.

Upon reaching George Smyrniotis he informed me;

Parties met & Chrosteks were provided a list of requirement & expectations to be met before Ben would be allowed to returned to play.

Requirements were fulfilled & Ben has been reinstated.

The original concern of this investigator was the player's removal absent due process.

Based upon relevant communications & documentation reviewed, It appears Chicago Park District has dealt with this matter respecting player's due process rights.

This matter should be considered closed.

Gene Ognibene
Attorney & Counsellor

103 Ogden Ave
Suite 202
Clarendon Hills, Il 60514
Office  630-942-0880
Mobile 630-632-8538

Exhibit 4

Director who will have all the rights and duties of the Director deployed to the active combat zone, to attend any meeting of the board of directors in that Director's absence.

**E.**  Any meeting of the Board of Directors may be held without fifteen (15) days advance notice, providing waivers of notice are given, in writing, by at least ninety percent (90%) of all voting directors.

**F.**  Copies of the minutes of all meetings of USA Hockey, its Committees and the Board of Directors shall be mailed or emailed by the Executive Director within forty-five (45) days of such meetings to the directors of USA Hockey.

**G.**  A conference among directors by any means of communication through which the directors may simultaneously hear each other during the conference shall constitute a Board meeting.

**H.**  The Annual, Winter, and any Special Meetings of the Board shall take place, respectively, during the Annual Congress, Winter Meeting, or any Special Meetings of USA Hockey.

## 9. VOTING

**A.**  Each director in attendance at a Board of Directors meeting shall have one vote. Proxy voting shall not be permitted, except as outlined in 8.D.

**B.**  At all meetings of the Board of Directors, or its Councils, Committees or Sections, voting shall be by a show of hands (or by voice vote, if the meeting occurs by a teleconference or other electronic means permitted hereunder), unless (i) for an in-person meeting, the persons participating in such meeting on motion duly made, seconded and carried by vote of the persons then present decide upon a ballot (paper or electronic) prior to the commencement of balloting; or (ii) for a teleconference or other electronic meeting, the notice of the meeting provides notice of the method of voting to be used, or electronic voting is approved by the persons participating in such meeting on motion duly made, seconded and approved by majority vote. In a teleconference or electronic meeting, voting by email shall be permitted if the notice of the meeting provides notice that email voting will be used, including the deadline for sending email votes and the email address to which the votes should be sent.

**C.**  A decision at a meeting of the Board of Directors or its Councils or Committees shall be made by the majority of the votes cast, unless the favorable vote of a larger proportion of the votes is required by these Bylaws.

## 10. DISPUTE RESOLUTION, DISCIPLINE, ARBITRATION

**A.**  **Dispute Resolution**
  **(1)  General**
  All claims, demands, discipline or disputes ("Disputes") arising by and between Parties, as defined in Section 10. B below, shall be subject to the provisions of this Bylaw 10 and this Bylaw shall constitute the sole and exclusive remedy for dispute resolution.

(2) **Purpose**

It is the specific purpose of this Bylaw 10 to provide a uniform method of resolving Disputes that is a full and complete substitute for any court proceedings and that utilizes the specific skills, expertise and background of individuals experienced in the sport of hockey and sports administration. The procedures herein are referred to collectively as the "Dispute Resolution Procedure."

(3) **Submission to Bylaw 10 and Failure to Follow Procedure**

Each Party, by virtue of membership, affiliation or participation at any time in USA Hockey or a sanctioned USA Hockey game or program, agrees to abide by this Dispute Resolution Procedure. Failure to abide by the Dispute Resolution Procedure shall, in addition to any other sanctions allowed by these Bylaws:

(a) Make a Party and any person or entity representing, participating with or aiding such Party liable for any and all costs and expenses, direct or indirect, including reasonable court costs and attorneys' fees and the value of volunteer time incurred by USA Hockey, its Affiliate Associations, directors, officers and/or agents; and

(b) Subject such Party to Summary Suspension and/or disqualification from membership and any right to participate in USA Hockey or its Affiliate Associations' sanctioned events in the sole discretion of USA Hockey or its Affiliate Associations.

(4) **Submission to Jurisdiction of U.S. Center for SafeSport**

Each person defined as a "Participant" agrees that he/she shall be (a) subject to the jurisdiction of the U.S. Center for SafeSport ("USCSS") with respect to the investigation and resolution of any allegations that such Participant may have violated (i) the sexual abuse and misconduct policies as referenced in the USA Hockey SafeSport Program Handbook and defined by the USCSS, (ii) allegations of violations of USA Hockey's SafeSport Policies that are reasonably related to and accompany a report or allegation of sexual abuse or misconduct, and (b) subject to any action taken by the USCSS as a result of such allegations, including without limitation, suspension, permanent suspension, and/or referral to law enforcement authorities, all as set forth in the USCSS Policies & Procedures.

**B.** *Definitions*

(1) **For the purposes of this Bylaw, the words, terms and phrases used in this Bylaw 10 shall have the following definitions:**

"Administrative Action" shall mean any action or decision by USA Hockey, an Affiliate Association or a local league, association or program (other than "Discipline" as defined below) that affects any Parties' eligibility to participate in domestic competition and/or their membership in any organization within the jurisdiction of these Bylaws.

**Bylaws**

---

*Annual Guide*

"Affiliate Association" shall be an Affiliate Association as described in Bylaw 3 which is subject to an Affiliate Agreement with USA Hockey.

"Appeal Authority" shall mean the body or organization having jurisdiction to decide any applicable appeal according to relevant governing documents and structures.

"Applicable Rules," as defined in Bylaw 1.A., means the bylaws, rules and regulations, playing rules, SafeSport and other policies, core values and decisions of the Board of Directors of USA Hockey, and comparable bylaws, rules, policies, documents and decisions of USA Hockey's applicable region, District, Affiliate Association or special jurisdictional ice hockey association.

"Disciplinary Authority" shall mean USA Hockey, including each operating council of USA Hockey (Youth, Junior, Adult and International), any certified Junior league, any Affiliate Association, or a local league, association or program having jurisdiction to issue Discipline to any Party within the jurisdiction of USA Hockey.

"Discipline" shall mean a suspension, probation, censure or other discipline of a Party.

"Domestic Competition" shall mean any ice hockey event, including, but not limited to, games, tryouts, competitions and the like, other than "Protected Competition."

"Participant" shall mean, for the purposes of Sections 10.A.(4) and 10.D.(3)(k), (1) those persons registered with USA Hockey as Registered Participant Members (players and coaches), referees, and in the "Manager/Volunteer" category, (2) all persons serving as a member of USA Hockey's Board of Directors, on a national level council, committee or section, or in any other similar positions appointed by USA Hockey, (3) all coaches, officials or staff (e.g., trainers, physicians, equipment managers) for any USA Hockey team, camp or national level program, (4) all USA Hockey national staff, and (5) any person that is authorized, approved or appointed by USA Hockey, a USA Hockey Affiliate or Member Program to a position of authority over athletes or that have frequent contact with athletes.

"Party" shall mean Registered Participant Member, Allied Member or Affiliate Association and other persons or organizations within the jurisdiction of USA Hockey, USA Hockey itself or its Affiliate Associations, including, but not limited to, each parent, guardian, agent or other person, and each league, club, sponsor, facility or other group or organization, that is engaged in domestic competition or participating in a USA Hockey sanctioned event of any kind, or any person or organization seeking to be a member of USA Hockey or its Affiliate Associations, or seeking to engage in domestic competition or to participate in USA Hockey sanctioned events.

"Playing Rules" shall mean playing rules of the game adopted from time to time by USA Hockey and published as USA Hockey Playing Rules.

Bylaws

*2019-20 USA Hockey*

"Playing Rules Suspension" shall mean suspensions expressly permitted or mandated by the USA Hockey Playing Rules.

"Protected Competition" shall have the meaning ascribed to it in the current governing documents of the United States Olympic & Paralympic Committee, including its Bylaws and the provisions of the Ted Stevens Amateur Sports Act (36 USC Sec. 371 et seq.). Without limiting the foregoing, such term shall include (i) competition by Registered Participant Members or Allied Members in the following international ice hockey competitions: the Olympic Games, Pan American Games, Operation Gold, World Championship or international championships recognized by the International Ice Hockey Federation ("IIHF"), the Paralympic Games, or an International Paralympic Committee recognized World Championship in events on the Paralympic Games program, and (ii) any event, including but not limited to, games, tryouts, and competitions organized and conducted by USA Hockey in its selection proceedings and publicly announced in advance as a competition or event directly qualifying each successful competitor therein as an athlete representing the United States in events listed under the preceding subsection (i). For purposes of the foregoing definition of Protected Competition, actual tryouts for the team which will participate in competition set forth in (i) shall be included.

"Protected Competition Participant" shall mean a Party participating in Protected Competition.

"Registered Participant Member" and "Allied Member" shall have the meaning as defined in Bylaw 1.A.

"Summary Suspension" shall mean a suspension issued by a Disciplinary Authority prior to a hearing being conducted.

"Unified Procedure" shall mean the hearing and other procedures for issuing Discipline and for a Party's contesting an Administrative Action, as described in Bylaw 10.C. below.

"United States Olympic & Paralympic Committee" or "USOPC" is the national sports organization with authority granted by the provisions of the Ted Stevens Olympic and Amateur Act, 36 USC Sec. 371 et seq., to appoint the National Governing Body for various amateur sports in the United States.

The "USOPC National Anti-Doping Policies" include the required agreement by Participants to be bound by the USOPC National Anti-Doping Policies and the current United States Anti-Doping Agency Protocol for Olympic Movement and Testing.

"United States Anti-Doping Agency" or "USADA" is the doping regulatory agency that is charged with the responsibility of monitoring and enforcing doping violations for the USOPC, and pursuant to USOPC anti-doping policies and the current World Anti-Doping Agency Code.*

Bylaws

"USCSS" shall mean and refer to the U.S. Center for SafeSport (or any successor otherwise named entity recognized by the USOPC).

"USCSS Code" shall mean and refer to the policies and procedures adopted by the USCSS for the U.S. Olympic and Paralympic Movement's sport National Governing Bodies, which may be found at www.uscenterforsafesport.org.

The "World Anti-Doping Agency" or "WADA" is the international anti-doping agency with authority based upon the signatories of the World Anti-Doping Code.

The "World Anti-Doping Code" requires that each signatory establish rules and procedures to ensure that all Participants are informed of and agree to be bound by anti-doping rules in force by the relevant anti-doping organizations.

*To implement this WADA policy the USOPC requires that each NGB shall be responsible for informing Participants in its sport of the USOPC National Anti-Doping Policies and the USADA Protocol for Olympic movement and testing which is incorporated into the agreement between the USOPC and USADA. By virtue of their membership in an NGB or participation in a competition organized or sanctioned by an NGB, Participants agree to be bound by the USOPC National Anti-Doping Policies and the USADA Protocol.

## C. Unified Procedure

### (1) General

Except as may be permitted in Bylaw 10.D. and 10.F. below, no Party may be suspended from participation or otherwise disciplined for any alleged violation of these Bylaws, USA Hockey Rules and Regulations, Policies, Codes of Conduct and Ethics or any such Bylaw, Rules and Regulations, Policies, Codes of Conduct and Ethics of an Affiliate Association, league, club, sponsor, facility or other group or organization, unless a hearing has been held prior to the action being taken according to the provisions of this Unified Procedure. A Registered Participant Member, Allied Member or other person within the jurisdiction of USA Hockey may be subject to Discipline in accordance with this Unified Procedure for violation of the Applicable Rules or for conduct unsuitable for the sport of ice hockey.

### (2) Purpose

It is the purpose of this Unified Procedure to provide Parties a fair hearing (a) prior to being subject to Discipline, which shall include reasonable notice of the grounds for the proposed Discipline, and (b) to contest an Administrative Action, which hearing shall include reasonable opportunity to prepare and present their case and argument in accordance with these rules, including the opportunity to call witnesses and present evidence, the opportunity to see all evidence intended to be used at the hearing, to be assisted by counsel at the hearing, and which may include the opportunity of a Party to cross examine the complainant or other witnesses, all as may be subject to the rules of the hearing panel as provided in subsection (3)(e) below. Notwithstanding that a Party seeks to challenge an Administrative Action, such Administrative Action shall remain in effect unless overturned pursuant to a hearing or appeal as set forth herein.

Bylaws

**(3) Hearing Procedure**

**(a) Hearing Panel**

The Disciplinary Authority considering issuing any Discipline, or upon written demand by a Party contesting a suspension or other disciplinary action where no hearing was held, or upon written demand by a party that desires to contest an Administrative Action, shall appoint a hearing panel of a minimum of three reasonably disinterested and impartial persons to conduct the hearing. In cases involving coaches and referees, the District or Affiliate Association Referee-in-Chief or Coach-in-Chief, as appropriate, or his/her designee, shall serve on the hearing committee. For any dispute where USA Hockey appoints a hearing panel to address a grievance or impose discipline at the national level, at least 20% of the members of the hearing panel shall be Eligible Athletes.

**(b) Hearing Timing**

The hearing panel shall hold the hearing no later than thirty (30) days after its appointment unless a later date is agreed upon by the Parties and approved by the hearing panel. Notwithstanding that a hearing panel has up to thirty (30) days after its appointment to hold a hearing, a Party that has been issued a Summary Suspension or that may be suspended pursuant to an issued hearing notice may request an expedited hearing to challenge such suspension, and upon receipt of such request the hearing panel shall exercise reasonable effort to provide such expedited hearing.

**(c) Hearing Notice**

Not later than seven (7) days before the hearing date, the hearing panel shall provide written notice to all interested Parties of the time and place of the hearing, the manner in which the hearing will be conducted, the grounds for any proposed suspension, discipline or Administrative Action, the possible consequences of an adverse finding, and the issues to be resolved by the panel. Notwithstanding that a hearing panel must ordinarily provide at least seven (7) days notice before a hearing date, a Party that has been issued a Summary Suspension or that may be suspended pursuant to an issued hearing notice may waive such seven (7) day notice period in order to have a hearing on less notice.

**(d) Hearing Location**

Subject to the provisions of the following subsection (e), the hearing panel shall make every reasonable effort to convene the hearing in a location accessible to all the Parties.

**(e) Conduct of Hearing**

The hearing panel may in its discretion hold a formal or informal hearing, in person or by telephonic conference call or video conference, hear any evidence it believes is relevant to the issue(s) before it, place limits on time, evidence and documentation, have witnesses or written statements and establish other hearing rules so long as the Parties are informed

Bylaws

of the established procedures, each Party has a reasonable opportunity to present its case and argument in accordance with the hearing panel's rules, and each Party is treated in a substantially equal manner. The Rules of Evidence in judicial proceedings shall not apply in the hearing. The Parties may be represented by counsel of their choosing at their own expense, provided that the hearing panel may set rules for the involvement of counsel in the hearing. If the hearing panel has not made arrangements for a record of the proceedings, a Party may at its own expense create a stenographic or other record of the proceedings and must inform the hearing panel prior to the hearing of any arrangements so made. A copy of any such record created by or for a Party shall be provided at such Party's cost to the hearing panel. Other Parties will be permitted to secure a copy of the record in the normal course at their own expense.

**(f) Burden of Proof**
In order to impose a suspension or discipline, the hearing panel must make a finding supported by a preponderance of the evidence (i.e., more likely true than not true) that the Party violated an Applicable Rule. The Disciplinary Authority proposing the Discipline shall have the burden of proof and shall present evidence to support the suspension or discipline by a preponderance of the evidence. In the case of an Administrative Action, the burden of proof shall be on the Party challenging the Administrative Action to prove by a preponderance of the evidence that the Administrative Action was made in an arbitrary or capricious manner or was not supported by the facts. In a contest of an Administrative Action, only the evidence presented to or considered by the Party taking the Administrative Action shall be presented and considered by the hearing panel.

**(g) Decision**
The hearing panel shall use reasonable efforts to (i) render its decision within five (5) business days of the completion of the hearing or the closing of the record whichever is later, and (ii) prepare and deliver a written decision to the Parties within fifteen (15) business days of the completion of the hearing or the close of the record whichever is later. The written decision shall contain findings of material facts, conclusions, the order of the hearing panel and a statement of any right of appeal a Party may have as a result of the decision. Delivery of the decision to the Parties may be made by first class mail or other delivery service or electronic mail in the discretion of the hearing panel.

**(h) Scope of Hearing Panel Decision**
Unless explicitly excepted by another provision of these Bylaws, the decision of the hearing panel shall be (i) in effect only for the program governed by the Disciplinary Authority and (ii) subject to appeal as set out in Bylaw 10.E. and any further review provided for in the governing documents of USA Hockey or the appropriate Affiliate Association. If the

**Bylaws**

*2019-20 USA Hockey*

Disciplinary Authority wishes to extend any suspension or discipline it ordered beyond its program, it must notify, as applicable, the state or Affiliate Association. If the suspension or discipline is imposed by a state or Affiliate Association, or if a local Disciplinary Authority's decision is affirmed by a state or Affiliate Association, and the state or Affiliate Association wishes to extend the scope of the hearing panel's decision beyond the state's or Affiliate's jurisdictional geographic area, it may only do so by submitting a written request to do so and a copy of the written Disciplinary Authority's and/or Appeal Authority's decision to the Executive Director of USA Hockey, who shall advise all other Affiliate Associations and Junior Leagues of the suspension or Discipline and upon such notice the suspension or Discipline shall be in effect for all Affiliate Associations and all Junior Hockey. Notwithstanding any of the foregoing, any suspension imposed by USA Hockey or a USA Hockey Affiliate (i) for violation of the sexual misconduct policies of the USCSS or USA Hockey, or (ii) that is one year or more in length, shall automatically be considered a national suspension and shall be in effect across all USA Hockey sanctioned programs.

## D. *Exclusions from Unified Procedure*

### (1) General

As a matter of policy, law and practicality, there are matters that at least initially do not or should not be subject to the Unified Procedure. Any matter not specifically excluded from the Unified Procedure shall be covered by the Unified Procedure.

### (2) Purpose

It is the purpose of this Bylaw 10.D. to distinguish those disputes and actions that do not require a hearing prior to imposing a suspension or discipline or that require different procedural handling and safeguards, and to set them out separately in order to highlight any uniqueness such disputes and actions may possess.

### (3) Exclusions

#### (a) Summary Suspensions

A Summary Suspension may be imposed by any Disciplinary Authority only in those cases where a Party has been arrested for a crime alleged to have been committed, a Party has assaulted another or violated the USA Hockey SafeSport Policy, including such abuse between adults, or other violations of USA Hockey Policies set forth in the Annual Guide or comparable Policies of Affiliate Associations that are in writing and have been approved by USA Hockey.

Any such Summary Suspension must be in writing and given to the suspended Party and the writing shall inform the Party of his or her right to request a hearing. The suspended Party must submit a request for a hearing of a Summary Suspension within seven (7) days of the Party being notified of the suspension. Any hearing following a Summary Suspension shall be conducted according to the provisions of the Unified Procedure.

Bylaws

**(b)  Playing Rules Suspensions**

Any Playing Rules Suspension does not require a hearing except that, in the event of the imposition of a match penalty as defined in the Playing Rules, a hearing must be offered to be held as set forth in the Playing Rules, and the terms and length of the Party's suspension shall be as set forth in the Playing Rules unless modified or revoked by the hearing panel. Any hearing for a match penalty shall be conducted according to the Unified Procedure; provided that, in the case of a match penalty being imposed in a district or national championship tournament, the hearing will be conducted immediately after the game in question by the on-site USA Hockey personnel. All applicable game scoresheets and referee reports must be presented to the hearing panel and made available to the Party subject to suspension. Any Playing Rule Suspension shall remain in force and effect and be final unless modified or revoked at a hearing, except that if the hearing is not held within 30 days of the incident together with a decision in accordance with the Unified Procedure, the suspended Party shall be automatically reinstated after the 30-day period. The failure to offer the hearing shall not prohibit the hearing body from conducting the hearing after the 30-day period and thereafter imposing further disciplinary action.

**(c)  Officiating Suspensions**

The applicable state association or league or local supervisor of officials shall have the authority to suspend a referee up to ten (10) days without a prior hearing. The state association or Affiliate Association shall have the authority to suspend a referee after a hearing (held in accordance with the Unified Procedure) or in accordance with the Summary Suspension procedures.

Any official(s) who boycotts any game(s) due to any disciplinary action taken or not taken by a Disciplinary Authority shall subject said official(s) to Discipline in accordance with the Unified Procedure conducted by the organization subjected to said boycott.

USA Hockey does not recognize officials organizations. However, if any registered USA Hockey official is restricted or denied assignment eligibility for any USA Hockey game by an officials' organization or group of officials ("Officials' Organization"), except for good cause shown in accordance with the Officials' Organization written rules and then only for a very limited duration without a hearing as provided herein, then said Officials' Organization shall be subject to suspension or expulsion in accordance with the rules and regulations herein and that restriction or denied assignment shall have no effect.

A registered USA Hockey official that receives a match penalty while playing or coaching, shall also be suspended from officiating subject to a process for review as set forth below.

1. The official (a) shall not officiate any games pending the review, (b) shall be required to immediately notify his/her District Referee-in-Chief of the player's or coach's receipt of the match penalty, and (c) shall advise any assignors/schedulers of officials in order to be replaced in any scheduled games in the immediate future. The District Referee-in-Chief shall immediately investigate the incident (including by review of the scoresheet, game report and interview of the officials assessing the match penalty) and make a determination and supply a written determination as to whether the match penalty shall cause the official to be suspended from officiating while the match penalty is in effect. The District Referee-in-Chief's determination shall be provided to the official in question, the Affiliate President, and the applicable assignors/schedulers. The District Referee-in-Chief may make a determination (1) that the official shall be ineligible to officiate pending the match penalty hearing (or expiration of 30 days period for the hearing), (2) that the official shall be eligible to officiate pending the match penalty hearing, or (3) such possible restrictions as may be appropriate for the official's eligibility (e.g., the official is restricted from certain leagues or categories of games, etc.). The decision of the District Referee-in-Chief shall not be binding on the hearing panel reviewing the match penalty or any appeal therefrom.

Game assignors and schedulers shall appropriately schedule replacement officials for any previously scheduled games for which the suspended official is ineligible.

**(d) Assault on Game Official**
Assaults on Game Officials are violations of USA Hockey Playing Rules and as such are subject to the provisions for Playing Rules Suspensions. In the event of a match penalty for assault on a game official, the offending Party shall be immediately suspended from all USA Hockey sanctioned activity and if such penalty is affirmed after a hearing, the offending Party shall be suspended for not less than one calendar year with one year calendar year probation thereafter. In the cases of match penalties for assault on a game official, the governing state association or Affiliate Association, its designated hearing body, or the Junior Council sanctioned league shall exercise original jurisdiction in such matter. Suspensions for assault on a game official shall be immediately reported to the applicable Affiliate Association(s), and the appropriate registrar(s). Any game official assessing said penalty shall file with his/her USA Hockey District Referee-in-Chief a written game report within forty-eight (48) hours of the incident. The District Referee-in-Chief shall immediately investigate the incident and promptly submit a written opinion, together with the game sheets and reports to the applicable Disciplinary Authority, indicating whether the incident is applicable under Rule 601(f)1 or is

Bylaws

more applicable under a different playing rule. A copy of the Referee-in-Chief's written report and opinion shall be sent by the Disciplinary Authority to both the player, team official and game official involved. The Registrar may accept a registration subject to the terms of this suspension.

(e) **High School, College Club Hockey or Other Members**
A high school program or college club hockey program that is a member of USA Hockey but where membership and eligibility issues are determined pursuant to rules, regulations and dispute resolution procedures of a national, state or district interscholastic athletic organization, shall not be subject to the Unified Procedure to the extent that such organization's rules, regulations and dispute resolution procedures also address the matter.

(f) **National Team, Protected Competition Participant**
Any Party that may be subject to suspension, discipline or Administrative Action and who is a Protected Competition Participant including members of a national team such as players, coaches, managers and team leaders that is scheduled for international competition within thirty (30) days of the event that forms that basis for a possible suspension, discipline or Administrative Action, shall be subject to the jurisdiction of USA Hockey under the procedures in this subsection f.

Within twenty four (24) hours of the event that forms the basis of any proposed discipline or the proposed imposition of discipline whichever is later, either the Party proposing the discipline or the Protected Competition Participant shall inform the Executive Director of USA Hockey of the event and/or the proposed discipline. Upon referral of the matter to USA Hockey no further action shall be taken by any Party.

The Executive Director of USA Hockey shall, within twenty-four (24) hours of being notified by a Party relative to a Protected Competition Participant, initiate a preliminary review of the matter to determine whether there exists probable cause (i.e. evidence more likely than not) to believe that the Protected Competition Participant has engaged in conduct or committed acts, if proved to be true, that may warrant disciplinary action which would prevent the Protected Competition Participant from participating in Protected Competition.

The preliminary review shall be conducted by an impartial hearing officer appointed by the Executive Director in consultation with USA Hockey Legal Counsel within five (5) days of his/her appointment. He/she shall conduct a review informally in his/her sole discretion in a manner, time and place accessible to the Protected Competition Participant. The review may be in person or by telephonic conference call or video conference. The Rules of Evidence shall not apply but the Protected Competition Participant shall be given reasonable notice of the grounds of the proposed discipline,

Bylaws

the opportunity to prepare and defend his/her case and to have assistance of counsel if so desired.

It is the purpose of this preliminary review to expedite the resolution of the matter. Any Party refusing to participate or who unreasonably delays the review shall waive any rights in the hearing or review process and shall not be entitled to appeal any adverse finding.

The hearing officer shall make his/her decision within five (5) days of completing the review. Upon a finding of probable cause by the hearing officer that the Protected Competition Participant has engaged in conduct that warrants disqualification from Protected Competition, he/she shall verbally inform the Executive Director of USA Hockey and the Participant within twenty four (24) hours and reduce such findings to writing no later than five (5) days thereafter and such written decision shall specify the facts upon which the hearing officer has based the decision and inform the Protected Competition Participant of his/her right to request a full hearing on the matter.

In order to request a full hearing, the Protected Competition Participant must make a demand for a hearing to the Executive Director of USA Hockey within five (5) days of receiving the written decision. Notwithstanding the foregoing, the Protected Competition Participant shall also be entitled to exercise his/her rights under the current appropriate governing documents of the USOPC, which shall include at least the USOPC Bylaws. Failure by the Protected Competition Participant to demand a full hearing or to exercise rights under the appropriate governing documents of the USOPC shall entitle the Executive Director of USA Hockey in his/her discretion to exclude the Protected Competition Participant from Protected Competition or to end USA Hockey's supervision of the matter and allow any Party to proceed with imposition of discipline.

A full hearing demanded by a Protected Competition Participant after a finding of probable cause shall be conducted in accordance with the provisions of the Unified Procedure except that the Unified Procedure will be supervised by the Executive Director of USA Hockey and the hearing shall include, at a minimum, a member of the Legal Council of USA Hockey, a member of the International Council of USA Hockey, an Athlete Director if an athlete is involved, a coach if a coach is involved, an official if an official is involved, and two disinterested and impartial individuals chosen by the Executive Director. The Protected Competition Participant or any other Party in interest may request an expedited hearing process and the hearing panel must attempt to comply with any such request.

(g) **Doping, Protected Competition Participants**
All Protected Competition Participants and USA Hockey, Inc. shall be subject to the applicable provisions of the USOPC National Anti-Doping Policies, and the USOPC agreement

**Bylaws**

with the USADA, and its enforcement of the USADA Protocol for Olympic Movement Testing, which procedures and policies have incorporated the provisions of the World Anti-Doping Code. Such Participants shall be further subject to doping guidelines as may be promulgated from time to time by the International Ice Hockey Federation (IIHF), and the International Olympic Committee (IOC) and any agreements between USA Hockey and these entities relative to doping.

No athlete or athlete support personnel shall be denied eligibility within the meaning of this subparagraph (g) without first being afforded the opportunity for a hearing pursuant to the USADA Protocol for Olympic Movement Testing ("USADA Protocol"), or the hearing provisions of this Unified Procedure.

**(h) Unified Procedures Not Applicable to Civil Matters**
Disputes concerning liability or damages arising from personal injury claims, torts or other civil claims are not subject to the Unified Procedure.

**(i) National Championships Eligibility Appeals**
Any appeal of eligibility of a youth level, girls'/women's or high school varsity and/or prep school team, coach or player(s) to participate in District and/or National championships, or playoffs leading to a District or National Championship, following a final decision of the applicable Affiliate and/or applicable Registrar, are not subject to Bylaw 10 and shall be referred to and decided by the National Championships Appeal Committee comprised of the Youth Council Chair, the Registrar Section director and the National Championship Chair, or their designees. Specific provisions may be found in the USA Hockey Rules & Regulations, Section IX, District Playoffs and National Championships, or in the USA Hockey District and National Championship Tournament Guidebook.

**(j) Procedures Applicable To Participant Ineligibility Determinations Based on Financial Disputes**
1. **Decisions Internal to the Program**
A local program may, pursuant to its internal procedures, determine that a player that is delinquent in dues or fees owed to the program is not eligible to continue participating in the program during such delinquency. Such determination shall only apply to eligibility within that program.

2. **Disputed Claims and Extension of Ineligibility Determination to Other Programs**
In the event a local program desires to cause a player to be ineligible to participate throughout the program's applicable Affiliate based on a determination that the player that is delinquent in dues or fees owed to the program, such extension of the suspension or ineligibility must comply with the procedures of the applicable Affiliate, which at a minimum shall include the following:

a. **Notice Required**

The local program must deliver a written notice to the player's parents (or other person(s) responsible for payment) that, at a minimum: (i) describes the nature of the delinquent fees (e.g., membership dues, ice fees, equipment/uniform fees, etc.), (ii) states the amount due, (iii) advises that the family must notify the local program in writing within thirty (30) days if it disputes the financial obligation, and (iv) advises that, if the full amount is not paid within thirty (30) days of the parent's receipt of the notice, the local program may in its discretion seek to enforce the liability for the financial obligation and have the player deemed ineligible throughout the local program's Affiliate Association.

b. **Discussion Period**

During the thirty (30) day period, the parties may discuss the matter and seek to amicably resolve any disputed amounts and provisions for payment. The parties are encouraged to amicably resolve any disputed debts, and if at any time the local program and player enter into a written agreement to resolve the debt and also making provisions for payment, then the player shall become immediately eligible to participate in all USA Hockey programs.

c. **Financial Obligation Not Disputed**

Upon expiration of the thirty (30) day period described above, if (i) the parties have not otherwise resolved the matter, (ii) the amount claimed in the local program's notice has not been paid, and (iii) *the local program has not received written notice from the player's parents that it disputes the financial obligation*, then the local program may request that the applicable Affiliate Association deem the player to be ineligible to participate in any program within the Affiliate (which request shall include proof of compliance with A-C of this subsection). In this circumstance, the Affiliate Association may extend the ineligibility of the player throughout the Affiliate in accordance with the Affiliate's procedures.

d. **Financial Obligation Disputed**

If the amount of the financial obligation has not been paid or otherwise resolved, and *the local program has received written notice from the player's parents that it disputes the financial obligation*, then the local program may seek extension of the ineligibility throughout the Affiliate in accordance with the Affiliate's procedures, provided that, the local program shall take reasonable affirmative steps to enforce the obligation. The Affiliate may deny the local program's request in the Affiliate's discretion.

**Bylaws**

Any determination by the Affiliate that the player is ineligible throughout the Affiliate shall not be a determination that the debt is owed or the amount of such debt, but only that the player is ineligible based on the existence of a disputed debt.

e.  Any dispute about whether these procedures have been followed shall be decided in a hearing conducted by the Affiliate pursuant to the Unified Procedure, and shall be appealable to the Executive Committee pursuant to Bylaw 10.E. The hearing and appeal shall only address whether the procedures set forth in this Bylaw 10.(j)(2) have been followed, and shall in no way address the liability for or amount of the financial obligations.

**(k)  Allegations Regarding Sexual Abuse or Misconduct**
   **1.  Reporting**
   In the event that any Participant under the jurisdiction of the U.S. Center for SafeSport ("USCSS") is alleged to have violated the USA Hockey SafeSport Policy prohibiting sexual abuse or misconduct (see current edition of USA Hockey SafeSport Program Handbook and USCSS Policies & Procedures), or in the event that USA Hockey, any USA Hockey Affiliate or local program or any adult Participant receives a report that is required by the USCSS Code to be referred to the USCSS, USA Hockey, its Affiliates, local programs and adult Participants shall immediately report and refer such matter to USCSS. **The duty to report to USCSS and USCSS's jurisdiction to investigate shall not supersede any local, state, or federal reporting requirements or jurisdiction, and shall not affect or impair the ability of any person that reports to the USCSS from also reporting to the appropriate local, state or federal authorities.**

   **2.  Investigation/Discipline/Adjudication**
   The USCSS shall have jurisdiction and authority to investigate allegations or reports that a Participant has engaged in conduct defined in the USCSS Code to be within the USCSS's exclusive jurisdiction, including without limitation allegations or reports of sexual abuse or misconduct and of any allegations of violations of USA Hockey's SafeSport Policies that are reasonably related to and accompany a report of allegations of sexual abuse or misconduct, to issue any interim suspension or measures pending conclusion of the investigation, to make recommendations of sanctions or disciplinary action as a result of such investigation, and to adjudicate such matter according to the USCSS procedures for adjudication. **The USCSS shall also have discretionary authority and jurisdiction over other violations of the USCSS Code.** Neither USA Hockey nor any USA Hockey Affiliate or program shall engage in its own investigation

Bylaws

Exhibit 5

It is recommended that the Affiliate send a minimum of 3 letters by Certified Mail Return Receipt as follows:

a.   First letter stating that there is a balance due and requesting payment.

b.   Second letter stating the balance due with a request for payment and stating that if the amount is not paid within a certain time period *(30)* days that it will be forwarded to AHAI Rules & Ethics.

c.   Third letter stating the balance due and that the matter is being sent to AHAI Rules & Ethics.

After following the guidelines, submit copies of these items to the AHAI Rules & Ethics Chairperson for further action. AHAI will send a letter to the Obligor. If the Obligor fails to respond, AHAI may suspend the entire family pursuant to its By-Law. If the Obligor requests a hearing within the appropriate time frame, he/she will be afforded an opportunity to be heard. A hearing will be scheduled and if necessary, all parties may be requested to attend that hearing. The Rules & Ethics Committee will provide a written decision within 10 days. The decision can be appealed in accordance with the AHAI By-Laws, Article X of Rules and Regulations.

**10.5 ANNUAL AUDIT -** An audit will be conducted at the conclusion of each fiscal year, and will be available for inspection upon request by member organizations.

## ARTICLE 11
## FISCAL YEAR

**11.0** The fiscal year of AHAI shall begin on the first day of June in each year and end on the last day of May in each year.

## ARTICLE 12
## SEAL

**12.0** The Board of Directors shall provide a corporate seal that shall be in the form of a circle and shall have inscribed thereon the name of the corporation and the words "Corporate Seal, Illinois."

## ARTICLE 13
## WAIVER OF NOTICE

**13.0** Whenever any notice whatever is required to be given under the provisions of the Articles of Incorporation or under the provisions of The General Not-For-Profit Corporation Act of the State of Illinois, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE 14
## DISPUTES

**14.0      Resolution of Disputes, Exclusive Remedy.**

14.0.1   **Scope of Procedure and Purpose.** Because AHAI is a not-for-profit organization whose vital services are provided by volunteer efforts, AHAI has established a Dispute Resolution Procedure to provide an efficient, orderly and uniform method of resolving every controversy, question or dispute regarding or having any impact on amateur hockey, amateur hockey players, AHAI or any of AHAI'S Board Members, *(collectively referred to as a "Dispute")* which utilizes the special skills, expertise and background of people

- 12 -

experienced in hockey and sports administration matters. It is the further purpose of this By-Law to provide an administrative procedure that is a full, complete and exclusive remedy and substitute for any and all court or legal proceedings regarding any Dispute.

14.0.2 **Submission to Dispute Resolution Procedure.** Every person and entity within the jurisdiction of AHAI *(including, but not limited to, every member, player, coach, official, referee, parent, guardian, agent or any other person, and every affiliate member, league, team, club, sponsor, facility or any other group or organization), (collectively referred to as "Person and Entity")* by virtue of their membership, affiliation or participation, at any time, in an AHAI, program or sponsored event, agrees to submit exclusively to the Dispute Resolution Procedure established by the By-Laws and/or Rules, Regulations and Procedures of AHAI and/or USA Hockey *("Dispute Resolution Procedure")* as the sole and exclusive remedy of all Disputes and to completely forego any remedy in any court of law or equity or initiate any legal proceedings regarding the matters expressly or implicitly covered by the Dispute Resolution Procedure, except for those matters pertaining to playing rules which are specifically provided elsewhere within AHAI or USA Hockey By-Laws or Rules and Regulations.

14.0.3 **Exhaustion of Administrative Remedies Required.** Moreover, every Person or Entity further agrees to fully exhaust all administrative remedies available through the Dispute Resolution Procedure.

14.0.4 **No Circumvention of Dispute Resolution Procedures.** No Person or Entity shall attempt to circumvent the Dispute Resolution Procedure. Any attempt to circumvent the Dispute Resolution Procedure shall not diminish or alter the requirements or authority for the exclusive use of the Dispute Resolution Procedure concerning all Disputes as a full, complete and exclusive substitute for any and all court or legal proceedings. In addition, failure to participate to the fullest extent possible in the Disputes Resolution Procedure concerning any Dispute shall be a failure to exhaust the administrative remedies available, and AHAI, *(including any of its duly authorized committees)* shall have the power to assess costs, impose fines, disciplinary action *(including suspension)* and seek other sanctions, in accordance with all By-Laws and Rules, Regulations and Procedures established by the AHAI Board of Directors. "Costs" shall also include the time of AHAI personnel; for these purposes, a volunteer's time shall be measured by that individual's customary work position.

14.0.5 **Failure to Follow Process.** In addition to any other sanctions applicable hereunder, the failure to follow and abide by the Dispute Resolution Procedure may subject every Person and Entity and any Person and Entity representing, participating with or aiding such Person and Entity, to the following:

14.0.5.1 Liability for any and all expenses and costs, direct and indirect, including all reasonable court costs and attorneys' fees and the value of volunteer time, incurred by AHAI, its member organizations, or any of its directors, officers, or agents; and

- 13 -

14.0.5.2 Immediate suspension and/or disqualification from membership and forfeiture of the right to participate in AHAI and/or USA Hockey or any of their Affiliate Associations or sanctioned events.

14.0.6 **Rules of Construction.** In addition, in the event any Person or Entity seeks an appeal, arbitration or the recourse of any court of any jurisdiction on any Dispute for any reason, the following rules of construction shall control:

14.0.6.1 the constructions, interpretations, rulings, procedures, decisions and opinions of AHAI and/or USA Hockey *(including their directors, officers and duly authorized personnel)* shall be deferred to as being the product of their experience and judgmental expertise in amateur hockey and in the administration thereof;

14.0.6.2 if there is any rational basis for the decision of AHAI and/or USA Hockey, such decision shall be upheld, and the only question shall be, did AHAI and/or USA Hockey act contrary to the Constitution of the United States or the State of Illinois; the fact that another reasonable inference or interpretation could have been made will not be grounds for overruling or modifying a decision of AHAI and/or USA Hockey;

14.0.6.3 only the evidence and theories explicitly presented to AHAI and/or USA Hockey for consideration in the initial Dispute and prior to the rendering of its decision may later be presented or considered in court;

14.0.6.4 the burden of proof shall be on the party attempting to have any decision or action of AHAI and/or USA Hockey reversed, modified or changed in any way, and said burden shall be the equivalent of the highest degree of proof required in any civil proceedings; and,

14.0.6.5 any party not successful in overturning a procedure, ruling or other decision of AHAI and/or USA Hockey in its entirety, shall pay for any and all fees, expenses and other costs of AHAI and USA Hockey with respect to that matter *(including, but not limited to: attorneys' fees; court costs, court reporter, transcript, document and exhibit costs; fees and expenses of consultants, experts, investigators and witnesses, and in obtaining or producing materials or evidence; the transportation and other per diem or incidental expenses of each of the foregoing and of all volunteers; and, the value of each volunteer's time, both in and out of court, as measured by that individual's customary work position).*

## ARTICLE 15
## DISTRIBUTION OF ASSETS

**15.0** The assets of AHAI are permanently dedicated to exempt purposes within the meaning of Section 501*(c)(3)* of the Internal Revenue Code of 1954 *(or corresponding provisions of future laws).* AHAI shall not be operated for pecuniary profit and shall have no capital stock and shall make no distribution of dividends to its members, directors, officers or persons having a private interest in the activities of the corporation.

In the event AHAI is dissolved, the Board of Directors shall pay, satisfy and discharge all liabilities and obligations of AHAI or make adequate provisions therefore and distribute all remaining assets of AHAI to an organization or organizations engaged in activities substantially similar to those of AHAI and organized and operated exclusively for